IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED ASS'N OF JOURNEYMEN & APPRENTICES OF THE PLUMBING & PIPE FITTING INDUS. OF THE UNITED STATES & CANADA, AFL-CIO AND UNITED ASS'N OF JOURNEYMEN & APPRENTICES OF THE PLUMBING & PIPEFITTING INDUS. OF THE UNITED STATES & CANADA, AFL-CIO, LOCAL 648,<br><br>        Plaintiffs,<br><br>    v.<br><br>CH2M-WG Idaho, LLC,<br><br>        Defendant. | No. 4:07-CV-295-EJL<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it Plaintiffs' Motion to Compel Arbitration (Docket No. 2), Defendant's Motion to Dismiss (Docket No. 4), and Plaintiff's Motion for Summary Judgment (Docket No. 22). For the reasons discussed below, the Court will deny Defendant's Motion to Dismiss and Grant Plaintiffs' Motion to Compel Arbitration and Motion for Summary Judgment.

## STATEMENT OF FACTS

Plaintiff, The United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry ("United") represents plumbers and pipe fitters who work in the building and construction industries throughout the United States and Canada. Plaintiff, Local 648 represents plumbers and pipe fitters working in the building

**Memorandum Decision and Order – 1**

and construction industries in Eastern Idaho.

Defendant, CH2M-WG Idaho, LLC ("CH2"), is an Idaho corporation engaging in business with Plaintiffs. The Department of Energy awarded CH2 the cleanup project contract at the Idaho National Laboratory ("INL") site. As part of its contract, CH2 and its subcontractors are required to comply with the Davis-Bacon Act and must seek coverage determinations from the Department of Energy before awarding construction subcontracts. Both parties are signatories to a collective bargaining agreement called the INEEL Site Stabilization Agreement ("SSI"). This agreement contains the terms and conditions of work performed at the INL ("Site"), as well as procedures for dispute resolution.

The parties' dispute concerns CH2's decision to subcontract work to Premier Technology, Inc. ("Premier"), a non-union employer, to assist CH2 with the construction of an Integrated Waste Treatment Unit to process liquid waste at the Idaho Nuclear Technology Center facility located at the INL site. Premier is fabricating spool assemblies, jumper bypass assemblies, and a spacer assembly for this project. Premier is performing the work at Premier's plant in Blackfoot, Idaho. Premier is not a party to the SSA.

Local 648 filed a grievance under the terms of the SSA claiming that CH2's subcontract with Premier violated the SSA. CH2's position is that the off-site work performed by Premier is not covered by the Davis-Bacon Act, and therefore does not fall within the scope of work covered by the SSA. Accordingly, CH2 declined to participate in the grievance process under the SSA, which required mandatory arbitration. Because Local 648 believes the work is covered by the SSA, Plaintiffs filed a complaint on July 6,

**Memorandum Decision and Order – 2**

2007, seeking a declaratory ruling that CH2 breached the SSA by refusing to participate in the grievance procedure requiring mandatory arbitration of the dispute. (Docket No. 1). In conjunction with its complaint, Plaintiffs filed a motion to compel CH2 to participate in arbitration. (Docket No. 2). Local 648 and United argue that the broad arbitration provision in the SSA requiring arbitration of "any" dispute requires CH2 to arbitrate.

In response, CH2 filed a motion to dismiss the complaint and the motion to compel arbitration on July 30, 2007. (Docket No. 4). In its motion, CH2 argues that the SSA only covers "site work" as defined in the Davis-Bacon Act, and that Premier's work does not fall under that definition of the Act. (Mot. at 3, Docket No. 4-2). CH2 previously sought a ruling from the Department of Energy ("DOE") concerning similar work Premier performed off-site, and it contends that the current work performed by Premier falls under the Department's previous ruling that off-site work is not within the scope of the SSA. Therefore, CH2 argues that if the SSA does not apply, neither does its arbitration provision. Finally, CH2 argues primary jurisdiction precludes Plaintiffs' motion. Because the DOE has already made a decision on similar work, CH2 claims this disposes of Plaintiffs' claim on the issue and the ability of an arbitrator to decide the dispute. *Id.* at 7.

Local 658 concurs with one aspect of CH2's argument. Local 658 states that it is "in agreement that the subcontracted fabrication work involved in this case is not covered by the Davis-Bacon Act," but argues that the fact that the Davis-Bacon Act would not apply does not necessarily lead to the conclusion that the SSA would not apply. (Mem. at 3, Docket No. 15). Instead, Local 658 argues that the SSA incorporates by reference

**Memorandum Decision and Order – 3**

the "fabrication provisions of the appropriate National craft agreements," and that it is the National craft agreement that has been violated. The National craft agreement prescribes that activities falling within the definition of "pipe fabrication" must be performed by union employees at union wages. (Mem. at 6, Docket No. 2-2). Therefore, Local 648 contends that the arbitration provisions of the SSA apply to compel arbitration of the dispute over CH2's failure to follow the fabrication provisions of the National craft agreement.

On October 2, 2007, Local 658 filed a motion for summary judgment to compel arbitration, echoing the above arguments. The Court will take up all of the above referenced motions after discussing the standards of review.

## STANDARDS OF REVIEW

### I.     Rule 12(b)(1) & (6) Standard

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1965. Factual allegations must be enough "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. The Supreme Court explained that "[a]sking for plausible grounds to infer [a claim] does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable

**Memorandum Decision and Order – 4**

expectation that discovery will reveal evidence of [the claim]." And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely. *Id.*

Alternatively, dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n. 1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts").

For Rule 12(b)(1) motions, unlike Rule 12(b)(6) motions, the moving party may submit affidavits or any other evidence properly before the court. *Association of American Medical Colleges v. U.S.*, 217 F.3d 770, 778 (9th Cir. 2000). The opposing party must then present affidavits or any other evidence necessary to satisfy its burden of establishing that the court does, in fact, possess subject matter jurisdiction. *Id*.

## II.     Summary Judgment Standard

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

**Memorandum Decision and Order – 5**

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324.

## ANALYSIS

### I.     Motion to Dismiss

Defendant argues that an arbitrator lacks jurisdiction to hear this dispute because only the Department of Labor (DOL) may determine whether work is covered by the Davis-Bacon Act. Defendant claims that the question, a federal administrative regulation, is not one for an arbitrator. In support for this argument, Defendant relies on

**Memorandum Decision and Order – 6**

the following language in *Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council*, 940 F.2d 513 (9th Cir. 1991.):

> [C]hallenges to Davis-Bacon determinations are not subject to arbitration because only DOE – and not the parties to the collective bargaining agreement – has the authority to make such determinations. The Idaho court emphasized not only DOE's exclusive and final authority over Davis-Bacon determinations, but also the danger that arbitral review of such determinations would undermine the administrative review process provided in federal law.

*Westinghouse* at 522 (citing *Oil, Chemical & Atomic Workers Int'l Union, Local 20652 v. EG&G Idaho, Inc.*, 769 P.2d 548 (Idaho 1989).

In *Westinghouse*, the Ninth Circuit agreed that an arbitrator cannot question DOE's final determination of what constitutes Davis-Bacon work. *Id.* Notably, however, the court went on to stress that the dispute was nonetheless arbitrable because "[t]he arbitrator need not second-guess DOE's determination in order to decide Westinghouse's obligations." *Id.* The same is true here. Although Defendants would have this Court conclude that any dispute regarding a federal regulation is automatically banned from arbitration, that is not an accurate statement of the law. The law only prevents a court from upholding an arbitration decision which is contrary to a DOE determination. Plaintiffs in this case are seeking to enforce an arbitration agreement, not uphold an arbitrator's prior decision inconsistent with a DOL regulation. Accordingly, the Court will deny the motion to dismiss.

**Memorandum Decision and Order – 7**

## II. Motion to Compel and Motion for Summary Judgment[1]

Plaintiffs seek to enforce an arbitration agreement with Defendant.  "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council*, 940 F.2d 513, 516 (9th Cir. 1991.) (citing *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648 (1986)).  If a party is contractually bound to arbitrate, the next question is whether the dispute at issue is arbitrable.  The arbitrability of a dispute under a collective bargaining agreement is a question of contract interpretation, which is a question for the court, and therefore proper for summary adjudication.  *Id.* (citing *McKinstry Co. v. Sheet Metal Workers' Int'l Ass'n, Local Union No. 16,* 859 F.2d 1382, 1385 (9th Cir.1988)).

Where parties have agreed to submit disputes to an arbitrator, the scope of the court's inquiry is limited.  *United Steelworkers v. American Mfg Co.,* 363 U.S. 564, 567-68 (1960).  In such cases, the court must only ask whether the party seeking arbitration is making a claim which on its face is governed by the contract.  *Id.*  The remaining question on the merits, of who is right and who is wrong, is a question for the arbitrator.  *Id.* at 519.  Both the Ninth Circuit and the Supreme Court warn that a court faced with the question of arbitrability should be careful not to become "entangled in the construction of the substantive provisions of a labor agreement . . ." *Id.* at 521 (citing *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574 (1960)).  This admonition is such, that even if a claim appears to be frivolous, courts "have no business weighing

---

[1] Plaintiffs' Motion to Compel Arbitration is essentially the same as Plaintiffs' Motion for Summary Judgment.  Accordingly, the Court will address the motions together.

**Memorandum Decision and Order – 8**

the merits of the grievance . . ." *American Mfg. Co.,* 363 U.S. at 568, (see also *AT & T Technologies, Inc.*, at 649-50).

In addition to the limited scope of review in an arbitration dispute, the Supreme Court has established a "longstanding federal policy of promoting industrial harmony through the use of collective[ ]bargaining agreements." *Id.* at 516 (citing, *AT & T,* 475 U.S. at 651). This policy has given rise to a presumption of arbitrability. U.S. at 650. "This presumption carries particular force where the arbitration clause is phrased in broad and general terms." *Westinghouse Hanford Co.*, at 517. Because of this presumption, the party resisting arbitration "bears the burden of proving that the parties did not intend to arbitrate the grievance." *Id.* at 518. Only an express provision excluding a grievance from arbitration will make an agreement to arbitrate unenforceable. *See Id.* at 518 (cited in *Warrior & Gulf,* 363 U.S. 585), *see also AT & T,* 475 U.S. at 650 (quoting same). Where no such provision can be located, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* (citing *United Steel Workers of America*, 363 U.S. at 582-83. Consequently, unless a court finds that the arbitration clause contains no language capable of being interpreted to cover the dispute, the dispute is arbitrable. *Id.*

In this case, the arbitration clause is found in Article XX of the SSA. (*See* Exhibit A to Mot. Docket No. 4). It defines a "grievance" as "a dispute regarding the interpretation and application of the provisions of this [SSA]." (*Id.* at 17, section 1). Both Plaintiffs and Defendant agree that there is no applicable exception contained in Article XX. Generally, this would mean that most grievances are covered by the arbitration clause. However, where there is no express provision in an arbitration clause,

**Memorandum Decision and Order – 9**

the court may look to the substantive provisions of the contract, but only if the provisions contain an express exclusion from arbitration. *Westinghouse Hanford Co.*, at 521.

Defendant claims that Plaintiffs' grievance is not arbitrable because it is outside the scope of the SSA. Defendant argues that the SSA covers only "site work" as defined in the Davis-Bacon Act, and that Premier's work does not fall under that definition of the Act. (Mot. at 3, Docket No. 4-2). Plaintiffs disagree, claiming that the subcontracting provisions of Article XII reference the appropriate National craft agreement, which, in turn, encompass non-Davis-Bacon Act work. (*See* Exhibit A to Mot. at 6, Docket No. 4). Plaintiffs claim that the "grievance" arises over differing interpretations of Article XII – the Subcontracting provision.

Defendant is asking the Court to adopt its interpretation of the subcontracting provisions, which is essentially a request that the Court determine the merits of the grievance. As noted above, the Court must only ask whether the party seeking arbitration is making a claim governed by the contract, and leave the question of who is right and who is wrong to the arbitrator. *United Steelworkers*, 363 U.S. at 519. Here, a finding that the arbitration clause is "unenforceable" would require the Court to breach that duty.

The real question is whether the general arbitration clause encompasses the question presented in Plaintiffs' grievance. As discussed above, the SSA defines a "grievance" as "a dispute regarding the interpretation and application of the provisions of this [SSA]." (*See* Exhibit A to Mot., p.17, section 1, Docket No. 4). Plaintiffs' protest of the subcontracting of work by Defendant to Premier falls within that general arbitration clause. Accordingly, the Court will grant Plaintiffs' motions.

**Memorandum Decision and Order – 10**

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiffs' Motion to Compel Arbitration (Docket No. 2) and Plaintiff's Motion for Summary Judgment (Docket No. 22) shall be, and the same are hereby, GRANTED. Defendant shall submit to the arbitration process outlined in the SSA.

IT IS FURTHER ORDERED Defendant's Motion to Dismiss (Docket No. 4) shall be, and the same is hereby, DENIED.

The Court will enter a separate judgment as required by Federal Rule of Civil Procedure 58.

DATED: **March 27, 2008**

_____
Honorable Edward J. Lodge
U. S. District Judge